161 N.W.2d 688 (1968)
Solveig M. HENDRICKSON, Respondent,
v.
MINNEAPOLIS FEDERAL SAVINGS AND LOAN ASSOCIATION et al., Defendants,
Ruth Halbert, Appellant.
No. 40747.
Supreme Court of Minnesota.
October 4, 1968.
*689 Van Valkenburg, Moss & Flaherty, Minneapolis, for appellant.
Maloney, Carroll & Olson, and Lloyd W. Friedman, Minneapolis, for respondent.

OPINION
SHERAN, Justice.
Appeal from an order and decree of registration of the district court.

THE FACTS
On June 30, 1956, Martin Hendrickson and Solveig Hendrickson were married, and on January 3, 1957, a home previously owned by him was so conveyed as to make them owners of it as joint tenants and not as tenants in common. No part of the consideration for the premises was paid by Mrs. Hendrickson and there is no evidence to show that the creation of the joint tenancy was pursuant to an enforceable agreement.
On August 3, 1964, Martin Hendrickson duly executed a Declaration of Election to Sever Survivorship of Joint Tenancy by which he endeavored to preserve an interest in the premises for Ruth Halbert, his daughter by a previous marriage, appellant in this court. On the same day, he executed his last will and testament, by the terms of which he directed that his wife, Solveig M. Hendrickson, receive the minimum amount to which she was entitled under the laws of the State of Minnesota.
*690 Mr. Hendrickson died testate on October 9, 1964. Thereafter, Solveig M. Hendrickson made application to register title to the premises here involved in her name as fee owner. Ruth Halbert appeared and asserted claim to the interest in the realty to which she would be entitled if the declaration was effective to make Martin Hendrickson and Solveig M. Hendrickson owners of the realty as tenants in common, i. e., an undivided one-half interest subject to the widow's life estate.[1]
Upon reference, the referee found that Martin Hendrickson did not terminate the joint tenancy by his declaration, and that Solveig M. Hendrickson became the owner of an estate in fee simple in the whole of said property as surviving joint tenant. The district court ratified the report of the referee. A decree was entered accordingly and this appeal followed.

THE ISSUE
The issue for decision is this: Did the declaration have the effect of severing the joint tenancy, creating a tenancy in common? If it did, Ruth Halbert is the owner of an undivided one-half interest in said real estate subject to the life estate therein of Solveig M. Hendrickson. If it did not, Solveig M. Hendrickson owns the realty in fee simple absolute.

THE DECISION
Under the common law, there were three types of concurrent ownership: Tenancy in common, joint tenancy, and tenancy by the entirety. A joint tenancy is distinguished from a tenancy in common by the fact that a surviving joint tenant succeeds to the person with whom he shared the joint tenancy. A tenancy by the entirety, which can exist only between husband and wife, is like a joint tenancy in that survivorship exists, but is distinguished from the joint tenancy by the fact that there can be no partition, and it cannot be converted into a tenancy in common.[2]
As the common law of property developed during feudal times, there was a presumption in favor of joint tenancy due to reasons related to feudalism. As the age of feudalism ended, the reasons for this presumption also ended and survivorship came to be regarded "as an `odious thing' that too often deprived a man's heirs of their rightful inheritance."[3]
In Minnesota, the original presumption in favor of joint tenancy has been reversed by Minn.St. 500.19, subd. 2, which provides: "All grants and devises of lands, made to two or more persons, shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy." Disfavor for survivorship in Minnesota is also shown by the fact that in this state the estate of tenancy by the entirety, with its indestructible survivorship, is not recognized. Minn.St. 500.19, subd. 1; Wilson v. Wilson, 43 Minn. 398, 45 N.W. 710.
For a joint tenancy to exist, unity of time, title, interest, and possession must concur.[4] Traditionally, the survivorship feature could be destroyed and the joint tenancy converted into a tenancy in common if one of the unities was destroyed.[5] This would result, for example, if one of *691 the joint tenants conveyed his interest to a third party. Greiger v. Pye, 210 Minn. 71, 297 N.W. 173. The common-law lawyer used this principle to enable one joint tenant to unilaterally eliminate the survivorship feature and yet retain ownership in the property. A conveyance would be made to a third party or strawman, thus destroying the joint tenancy. Immediately thereafter the property would be reconveyed to the original owner. A tenancy in common would thus be created because the unities of time and interest would no longer be present. More recently the courts have come to allow joint tenants to convert their estate into a tenancy in common without the ritual of conveyance and reconveyance. It is only necessary for the joint tenants to mutually agree to sever the joint tenancy.[6] We are now asked to allow one joint tenant to do unilaterally that which we allow joint tenants acting in concert to do, i. e., terminate the joint tenancy by declaration without being required to go through the ceremony of a conveyance to a strawman and a reconveyance back again.
Authorities cited from other jurisdictions on this specific question are not particularly helpful. Den Hardenbergh v. Hardenbergh, 10 N.J.L. 42, 18 Am.D. 371, states that a joint tenancy may be severed by one of the joint tenants "at his will." However, this language was dicta which simply recognized the established rule that if done in the traditional manner a joint tenancy could be severed. The issue before us now was not presented. "The sole issue involved in this cause, as agreed by both plaintiff and defendants, is whether there was good delivery of the deeds conveying the properties in question." Newman v. Youngblood, 394 Ill. 617, 622, 69 N.E.2d 309, 311.
In Hawkesley v. May [1956] 1 Q.B. 304, [1955] 3 All E.R. 353, the court held that a declaration of intention to sever a joint tenancy was "obviously" a method by which a joint tenant could sever a joint tenancy, but it gave no reasons why this was obviously so.
The fact that we are dealing here with a homestead makes the problem more complicated than it would otherwise be. Minn. St. 507.02 provides that if the owner be married, no mortgage of the homestead, except for purchase money unpaid thereon, nor any sale or alienation thereof shall be valid without the signatures of both husband and wife. Thus, the traditional method of unilateral severance of the joint tenancy by conveyance and reconveyance was not available to Mr. Hendrickson. If this method were the only method by which a unilateral severance could be made, § 507.02 would have the effect of creating a tenancy by the entirety which is not recognized in Minnesota.
We hold that the method chosen here is sufficient to sever a joint tenancy. Had the property involved been any property other than a homestead, the decedent could have unilaterally severed the joint tenancy. Minn.St. 507.02 and 525.145(1) (b)[7] establish a public policy to protect for the wife the continued occupancy of the place of joint abode. However, this public policy does not necessarily apply to the remainder interest, which can be disposed of without adversely affecting the right of the surviving spouse to continue in possession and enjoyment for so long as she might live. Putting the property into *692 joint tenancy was apparently an estate-planning device. If the decedent had kept title to this real estate in his own name and executed a will by the terms of which it was devised to his wife in fee simple absolute, he would have been free at any time to revoke the will unilaterally. His wife would nevertheless have the right to a life estate in the homestead upon his death, but her right would be based on the statute and not the will. § 525.145(1) (b).[8]
If the survivor had taken some irrevocable action in reliance upon the creation or existence of the joint tenancy, or if some consideration was given or received when the joint tenancy was created, it would seem reasonable to insist that unilateral action would not be effective to deprive the passive joint tenant of the rights so created. But this is not such a case.
Our conclusion is that the trial court should be reversed.
Reversed.
NOTES
[1] Mrs. Hendrickson would be the owner in fee of the other undivided one-half interest in this realty because if the joint tenancy was severed she became with respect to it a tenant in common and owner in fee of an undivided one-half interest therein.
[2] Casner and Leach, Cases and Text on Property, pp. 304, 306, and 309; 41 C.J.S. Husband and Wife § 34(c).
[3] Hines, Real Property Joint Tenancies, 51 Iowa L.Rev. 582, 585; 48 C.J.S. Joint Tenancy § 3(d).
[4] Park Enterprises, Inc. v. Trach, 233 Minn. 467, 57 N.W.2d 194; Gau v. Hyland, 230 Minn. 235, 41 N.W.2d 444; Greiger v. Pye, 210 Minn. 71, 297 N.W. 173; Papke v. Pearson, 203 Minn. 130, 280 N.W. 183.
[5] 48 C.J.S. Joint Tenancy § 4; 20 Am.Jur. (2d) Cotenancy and Joint Ownership, § 15; Annotation, 64 A.L.R.(2d) 921.
[6] Greiger v. Pye, supra; McDonald v. Morley, 15 Cal.2d 409, 101 P.2d 690, 129 A.L.R. 810.
[7] Minn.St. 525.145(1) provides: "Where there is a surviving spouse the homestead shall descend free from any testamentary or other disposition thereof to which such spouse has not consented in writing or by election to take under the will as provided by law, as follows:

* * * * * *
"(b) If there be children or issue of deceased children surviving, then to the spouse for the term of his natural life and the remainder in equal shares to such children and the issue of deceased children by right of representation."
[8] Cases holding that a devise of joint tenancy property does not eliminate survivorship (see, Bassler v. Rewodlinski, 130 Wis. 26, 109 N.W. 1032, 7 L.R.A., N.S., 701) are based on the fact that the will does not become effective until the death of the testator, at which time the interest devised vests in the surviving joint tenant leaving nothing to pass under the terms of the will.