Annette M. GIBSON, et al., Respondents,

v.

TRUSTEES OF the MINNESOTA STATE BASIC BUILDING TRADES FRINGE BENEFITS FUNDS, Appellant.

No. A05–39.

Court of Appeals of Minnesota.

Sept. 27, 2005.

Matthew H. Beaumier, Gerlach Beaumier, Duluth, MN, for respondents.

Stephen C. Kelly, Rosene, Haugrud & Staab, Chartered, St. Paul, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; LANSING, Judge; and HALBROOKS, Judge.

## OPINION

MINGE, Judge.

Appellant judgment creditor challenges the grant of summary judgment limiting its recovery to the fractional share of the proceeds of certain real property formerly owned by the judgment debtor as a joint tenant. Appellant also challenges the district court's award of sanctions. Because appellant can recover only the proceeds attributable to the interest held by its debtor, and because the district court did not abuse its discretion in awarding sanctions, we affirm.

## FACTS

On May 13, 2003, judgment was entered against Elaine Gibson, one of the respondents, in favor of appellant Trustees of the Minnesota State Basic Building Trades Fringe Benefit Funds ("Trustees") in the amount of $90,948.84. This judgment was filed in Pine County District Court on July 9, 2003.

Respondent Gibson and the three other respondents in this action owned non-homestead real property in Pine County as joint tenants. This property was sold on July 11, 2003, with the sale proceeds of around $109,000 placed in escrow.[1]

Respondents sued for a judgment declaring that Elaine Gibson was entitled only to a one-fourth interest in the real estate, that appellant was entitled only to Elaine Gibson's one-fourth interest in the proceeds, and that the escrow agent should release the remainder of the funds to the other three respondents. Appellant filed an answer and counterclaim, requesting judgment declaring that appellant could recover the judgment against Elaine Gibson from the entire amount held in escrow, not just one-fourth of the proceeds from the sale. On May 27, 2004, respondents served appellant with a summary judgment motion, a motion for Rule 11 sanc-

---

1. The parties did not litigate the status of the judgment lien with respect to the property that was sold after the judgment was docketed. However, it appears that the lien was transferred to the escrowed proceeds and that the property itself was sold free and clear of the judgment.

tions, and a notice that a hearing would be held on June 28, 2004. These motions were filed with the court on June 17, 2004. Appellant filed a cross-motion for summary judgment.

After a June 28, 2004, hearing, the district court granted respondents' motions for summary judgment and sanctions. Appellant moved for reconsideration of the grant of sanctions. The district court filed a supplemental order for fees, costs, and disbursements, requiring appellant to pay respondents more than $10,000 in attorney fees, disbursements and costs. This appeal follows.

## ISSUES

I. May a judgment creditor of one joint tenant recover from the entire amount of the proceeds of the sale of property owned by four joint tenants?

II. Did the district court abuse its discretion in awarding sanctions?

## ANALYSIS

### I.

The first issue is whether the district court erred by denying appellant's claim that its docketed judgment against respondent Elaine Gibson constituted such a lien on real property in which she held a joint tenancy interest as to enable appellant to recover its debt from the entire proceeds of the sale of such property. When reviewing a summary judgment, an appellate court asks two questions: (1) are there any genuine issues of material fact; and (2) did the district court err in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Summary judgment is proper when the evidence in the record, including pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no

genuine issue of material fact and that either party is entitled to a judgment as a matter of law. Minn. R. Civ. P. 56.03; *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

 Appellant's argument that all of the proceeds of the property may be used to satisfy Gibson's debt "because [appellant's] judgment lien attached to the entire subject property" misstates the law. When a judgment is docketed, it becomes a lien for the unpaid judgment amount on "all real property in the county then or thereafter *owned by the judgment debtor.*" Minn.Stat. § 548.09, subd. 1 (2004) (emphasis added). Here, it is undisputed that Gibson, as a joint tenant, did not own the entire property. Therefore, appellants' lien could not and did not attach to the entire property; it attached to Gibson's interest only. While the parties cite no Minnesota case limiting a judgment creditor's ability to recover to only that portion of the proceeds of a property representing a joint-tenant judgment-debtor's interest in the property, several cases state that a judgment creditor can recover only from the interest held by the joint-tenant debtor and indicate that, for collection purposes, the debtor's interest excludes the interests of other co-owners. *Kipp v. Sweno,* 683 N.W.2d 259, 266 (Minn.2004); *Gau v. Hyland,* 230 Minn. 235, 241, 41 N.W.2d 444, 448 (1950); *Steele v. Taylor,* 1 Minn. 274, 280–81, 1 Gil. 210, 215–16 (1856). To rule otherwise would allow a joint-tenant judgment debtor to increase the reach of the judgment lien beyond the interest of the judgment debtor to the interests of other joint-tenants who are not judgment debtors, making them liable for a judgment against the debtor, when those nondebtors

may have had no responsibility for the debt or resulting judgment.

In *Kipp*, the supreme court considered whether a judgment against a husband could be executed against a homestead that he owned in joint tenancy with his wife. 683 N.W.2d at 261. Not only does *Kipp* state that "a judgment creditor cannot acquire more property rights in a property than those already held by the [debtor,]" it also states that "a judgment debtor ... may not increase the reach of the judgment lien beyond the property owned by the judgment debtor." *Id.* at 266. As noted above, (a) it is undisputed that Gibson, as a joint tenant, did not own the entire property, meaning appellant cannot recover against interests other than Gibson's; and (b) to rule otherwise would be to allow a judgment debtor, here Gibson, to increase the reach of the judgment lien to the interests of the joint tenants who are not judgment debtors. And we cannot say that *Kipp* is distinguishable because it involves a homestead and the homestead exemption from debt collection. A homestead exemption does not identify or address the extent of a debtor's interest in the property at issue; it limits a creditor's ability to use an asset (a debtor's interest in a homestead) to satisfy a debt. The factor limiting collection here is *not* the extent of a creditor's ability to use an asset (here, Gibson's interest in the property) to satisfy the debt, it is the extent of the debtor's interest in the asset.

In *Gau*, the court considered whether the state could recover a debt based on an old age assistance lien granted by the recipient of assistance. 230 Minn. at 236, 41 N.W.2d at 446. The then-effective statute stated that the lien attached to all real property, including joint tenancy interests. *Id.* at 236–37, 41 N.W.2d at 446 (citing Minn.Stat. § 256.26 (1949)). The recipient owned her home in joint tenancy with her daughter. *Id.* The court stated that the lien was

a charge only upon whatever interest in real property the [old age assistance] recipient owns and, where there are several interests owned by several parties, *as in cases of joint tenancy* ... [the lien is] a charge only *upon the interest owned by the [recipient], and not upon the interests owned by others.*

*Id.* at 241, 41 N.W.2d at 448 (emphasis added). The supreme court went on to hold that the state had no interest in the property because, at the death of the joint tenant/recipient, her interest in the property was extinguished, the lien was extinguished, and all rights to the property passed to the surviving joint tenant free of the lien. *Id.* at 245–46, 41 N.W.2d at 451. While, in *Gau*, the supreme court dealt with the old-age-assistance lien statute and its reference to "cases of joint tenancy" was dicta, its acknowledgement that the nondebtor joint-tenant's interest was not attached by the lien because it was not owned by the debtor is entitled to considerable weight. *See In re Wylde*, 454 N.W.2d 423, 425 (Minn.1990) (holding, while dicta in supreme court's opinion "is not conclusive evidence of the law and is not entitled to stare decisis deference[,] ... it should not be ignored, and is entitled to great weight") (*citing In re Estate of Bush*, 302 Minn. 188, 208, 224 N.W.2d 489, 501 (1974)); *Bush*, 302 Minn. at 207, 224 N.W.2d at 501 (stating supreme court dictum is entitled to "considerable weight" if it contains "an expression of the opinion of the court").

Similarly, in *Steele*, the supreme court considered the purchase of real property at an execution sale, stating that a judgment lien can only attach to the interest of the debtor, and therefore that the purchaser cannot take a greater estate than that

held by the debtor. 1 Minn. at 278, 280, 1 Gil. at 213, 215.

In the case before us, we note both that (a) if Gibson had severed the joint tenancy, she would have held a tenancy in common with an interest in the property equal to her percentage ownership share, *see Johnson v. Gray*, 533 N.W.2d 57, 62 (Minn.App. 1995) ("severance of a joint tenancy creates a tenancy in common"); 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 23 (2005); and (b) if there is a lien on one joint tenancy interest in property that is sold at a partition sale, the lien is only a charge on the proceeds allotted to the holder of the joint tenancy based on his or her share of the total ownership, Minn. Stat. § 558.09 (2004).

These authorities consistently limit a judgment creditor's ability to recover to the interest held by the judgment debtor and indicate that the debtor's interest, at least for collection purposes, is exclusive of interests held by other joint tenants. Also, appellant cites no caselaw and gives no convincing reason why it should be able to collect a larger share of the property's proceeds than Gibson could have claimed. Allowing appellant to do so would ignore and severely impair the interests of the other joint tenants based on actions taken by one joint tenant in matters unrelated to the property. Therefore, we conclude that appellant cannot obtain a greater interest in the proceeds of the property than that attributable to Gibson and affirm the district court's summary judgment that ap-

pellant may collect from only Gibson's interest in the sale proceeds.[2]

## II.

■ The second issue is whether the district court erred in imposing sanctions on appellant under Minn.Stat. § 549.211 (2004) and Minn. R. Civ. P. 11. Appellants allege that the award is substantively and procedurally defective and that the amount is unreasonable. A party and its counsel may be sanctioned if counsel violates his or her duty to ensure that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Minn.Stat. § 549.211, subds. 2–3; *see* Minn. R. Civ. P. 11.02, 11.03 (stating the same rule). Whether to award sanctions requires determining whether counsel had an objectively reasonable basis for making the factual or legal claim. *Uselman v. Uselman*, 464 N.W.2d 130, 142–43 (Minn.1990), *superseded by statute on other grounds*, Minn.Stat. § 549.21 (1990) (repealed 1997). The presence of bad faith can be considered when deciding whether to award sanctions. *Id.* at 145; *Peterson v. Hinz*, 605 N.W.2d 414, 417 (Minn.App.2000). An appellate court will not alter a district court's decision regarding whether to award sanctions under these provisions absent an abuse of the district court's discretion. *Uselman*, 464 N.W.2d at 145; *Leonard v. Northwest Airlines, Inc.*, 605 N.W.2d 425, 432 (Minn.App.2000); *Radloff v. First Am. Nat'l Bank of St. Cloud*, 470

---

**2.** Appellant argues that if Elaine Gibson were the joint owner of a bank account, it could recover against the total value of that account. Appellant fails to provide any authority that this is a common-law rule, as opposed to a consequence that results from the contractual terms of such a bank account or statutory definition of rights of joint holders in bank accounts. *See* Minn.Stat. § 524.6–

201, subds. 2, 4 (2004) (defining a joint bank account as a contractual deposit of funds that is payable on request to any of the designated parties). A joint tenancy in land is different from a joint bank account. There is no evidence in this proceeding that there was any contractual agreement among respondents that defined their relative interest in their jointly held real estate.

N.W.2d 154, 156 (Minn.App.1991). Also, because the purpose of sanctions under these authorities is deterrence, the statute and rule should be construed narrowly. *Uselman,* 464 N.W.2d at 142.

## A. Substantive Basis for Sanctions

■ Sanctions should not be imposed where the law is unsettled and a party makes an argument that is not a frivolous application of the law. *Leonard,* 605 N.W.2d at 433. If, however, a party brings an action based on a theory that does not exist and does not make a credible argument to support a modification of existing law, sanctions can be awarded. *Radloff,* 470 N.W.2d at 158.

■■ Here, settled Minnesota caselaw indicates that a judgment creditor cannot obtain a greater interest in property than that held by the judgment debtor. *Kipp,* 683 N.W.2d at 266;[3] *Gau,* 230 Minn. at 241, 41 N.W.2d at 448. Appellant, however, essentially argued that Elaine Gibson, a joint tenant owning a one-quarter interest in the property, had a right to *all* of the proceeds of the sale of that property. This argument is fundamentally inconsistent with relevant caselaw, and appellant made no credible arguments distinguishing that caselaw or justifying the application of all of the proceeds of the sale to satisfy the debt of the owner of a one-quarter interest. Even if appellant subjectively believed its argument had merit, it is clear that an objective standard is used for awarding sanctions under Minn.Stat. § 549.211 and Minn. R. Civ. Proc. 11. *See Uselman,* 464 N.W.2d at 142–43. Here, in light of existing law and appellant's failure to make a credible argument to modify

that law, appellant's argument does not satisfy the objectively-reasonable standard. The district court did not abuse its discretion by awarding attorney fees as a sanction.

## B. Procedural Basis for Sanctions

■ Appellant argues that the sanctions award is procedurally defective because respondents did not, as required by Minn.Stat. § 549.211, subd. 4 and Minn. R. Civ. Proc. 11.03(a)(1), serve appellant with the motion at least 21 days before filing or presenting the motion to the court. This 21–day period is a "safe harbor" time during which a party or its attorney can correct or withdraw the offending conduct and compliance with the 21–day "safe harbor" provision is mandatory. *Gibson v. Coldwell Banker Burnet,* 659 N.W.2d 782, 789–90 (Minn.App.2003). But appellant failed to allege any procedural problems with respondents' motion for sanctions at or before the hearing on the propriety of awarding sanctions.

As a result of that hearing, the district court both ruled that it would award sanctions, and directed respondents to submit a detailed billing statement and a calculation of costs and fees. In response to respondents' financial submissions, appellant sought reconsideration of the award of sanctions, but for reasons other than respondents' alleged failure to satisfy the 21–day requirement. Almost four months later, and after an abortive appeal, appellant first argued that respondents failed to satisfy the 21–day requirement in a spontaneous memorandum of law to the district court that again requested that the district court "reconsider" the award of sanctions.

**3.** Although the supreme court decision in *Kipp* was contemporaneous with the summary judgment motion in this proceeding, the case recognizes the issue in this case as settled law. *Cf. Kipp v. Sweno,* 629 N.W.2d 468, 471–73 (Minn.App.2001) (implicitly recognizing in an earlier stage of *Kipp* that only the interest of the debtor-joint tenant may be reached by the judgment creditor), *review denied* (Minn. Aug. 22, 2001).

Respondents argued to the district court that this second request for reconsideration was, among other things, improper both because appellant failed to obtain permission to make it, and because it did not address the question then at issue: the amount of sanctions to be awarded. *See* Minn. R. Gen. Pract. 115.11 (stating "[m]otions to reconsider are prohibited except by express permission of the court" and that "[r]equests to make such a motion . . . shall be made only by letter to the court"); *cf.* Minn. R. Gen. Pract. 115.11 1997 advisory comm. cmt. (noting "[m]otions for reconsideration are not opportunities for presentation of facts or arguments available when the prior motion was considered"). Because appellant's second request to reconsider was defective in at least two ways, the district court neither erred nor abused its discretion by not granting relief based on that motion.

## C. *Amount*

■■■ Appellant also argues that the attorney fees actually awarded by the district court were unreasonable because the district court awarded fees based on services relating to this action beginning in August 2003, even though the complaint was not filed until January 9, 2004. The district court has "wide discretion to award the type of sanctions it deems necessary." *Kellar v. Von Holtum,* 605 N.W.2d 696, 702 (Minn.2000). The purpose of sanctions is deterrence, not compensation or punishment. *Uselman,* 464 N.W.2d at 142. The district court has the discretion to impose a sanction in the amount sufficient to deter future litigation abuse, even if the amount is greater than the amount of attorney fees. *Gibson,* 659 N.W.2d at 791. The district court's decision to award the fees related to the initial attempt to settle this dispute before formal litigation started was not an abuse of its discretion.

## DECISION

Appellant, as a judgment creditor, is able to recover only against the proceeds of the interest held by Elaine Gibson, who was one of four people who owned real property as joint tenants. Because she was entitled only to one-fourth of the proceeds from the sale of the property, appellant can only recover that amount. Because appellant was essentially asserting that it was entitled to recover from the ownership interests of parties who were not debtors without providing adequate legal support for this conclusion, it was within the district court's discretion to award sanctions against appellant for costs, fees, and disbursements related to respondents having to litigate to obtain the release of their funds.

**Affirmed.**